# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

BRYANT MARTIN COLLIER,

Defendant-Appellant.

UNPUBLISHED
March 29, 2018

No. 336025
Ingham Circuit Court
LC No. 15-000901-FC

Before: SAWYER, P.J., and BORRELLO and SERVITTO, JJ.

PER CURIAM.

Defendant, Bryant Martin Collier, appeals as of right his conviction by jury of first-degree premeditated murder, MCL 750.316(1)(a). The trial court sentenced him to life imprisonment without parole. We affirm.

## I. FACTS

On August 14, 2015, defendant stabbed Antonio Bailey at defendant's home. No one witnessed the stabbing, but Keeran Miles, who lived with and was friends with defendant, testified that he was in his bedroom at the home and had not heard anything out of the ordinary before he suddenly heard Bailey yelling frantically for him. Miles emerged from his bedroom to see Bailey lying on the kitchen floor bleeding from his neck area "like a super soaker" and requesting that Miles call 911. Miles said that defendant was standing at the entryway to the kitchen staring down at Bailey. Miles saw no injuries on defendant.

By the time paramedics arrived, Bailey was not breathing and had no pulse. There were no defensive wounds on Bailey's body. The forensic pathologist testified that Bailey had been stabbed in the upper right chest and that the stab wound actually cut through an artery and punctured a lung. A police investigator later found a bloodied bent knife with a popcorn bag covering its handle in the home.

Bailey's brother, Miguel Castanon, testified that he was told something happened to Bailey at defendant's home down the street from him. He ran to defendant's home, passing defendant who was walking away from the home, and saw his brother bleeding and unresponsive on the floor. After learning that defendant was responsible for the stabbing, Miguel ran back outside, caught up to defendant, and asked him why he stabbed Bailey. Defendant did not

-1-

respond. Miguel then repeatedly punched defendant in the face and kicked him when he fell to the ground.

Defendant was subsequently arrested and interviewed by detectives. At that time, defendant had a swollen right eye, a swollen lip, and blood on his hands, but no defensive wounds on his hands or arms.

Defendant, however, claimed that he stabbed Bailey in self-defense, and that he did not intend to kill him. Defendant averred that he was napping on his couch when Bailey came to his home, and that he awoke to Bailey standing over him and antagonizing him. Defendant testified that he put his face in his hands to protect himself. Defendant averred that he used his hand to push Bailey away, but Bailey started punching him. Defendant testified that he stood up and warded off the blows. According to defendant, Bailey was backing into the kitchen as he swung at defendant, and defendant grabbed Bailey and told him to stop hitting him. Defendant testified that he was "terrified" at the time and that he was concerned for his life. He stated, "I stumbled back onto the stove. I grabbed the knife . . . and I swung it." When asked about the popcorn bag on the knife, he stated, "I don't know what that is." Defendant testified that after he swung the knife, he stumbled back and saw Bailey lying on the ground.

II. ANALYSIS

Defendant first argues that there was insufficient evidence presented at trial to support his first-degree murder conviction. We disagree.

"The sufficient evidence requirement is a part of every criminal defendant's due process rights." *People v Oros*, 320 Mich App 146, 152; 904 NW2d 209 (2017). In reviewing whether a conviction is supported by sufficient evidence, this Court examines the evidence presented to the jury in a light most favorable to the prosecution to determine whether a jury could have found that the prosecution proved the essential elements of the crime beyond a reasonable doubt. *People v Gaines*, 306 Mich App 289, 296; 856 NW2d 222 (2014). A reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). Review is the same whether the evidence is direct or circumstantial. *Id*. "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999). The prosecution is bound to prove the elements of the crime beyond a reasonable doubt, and it must convince the jury "in the face of whatever contradictory evidence the defendant may provide." *Nowack*, 462 Mich at 400.

First-degree murder is a statutory offense. Therefore, this Court must "interpret the statute by examining its plain language . . ." *Oros*, 320 Mich App at 153. The Michigan Legislature defined first-degree murder, in relevant part, as "[m]urder perpetrated by means of poison, lying in wait, or any other willful, deliberate, *and* premeditated killing. *Id*., citing MCL 750.316(1)(b) (emphasis added).

In order to convict defendant of first-degree murder, the prosecution had to prove that defendant intentionally killed the victim and that the act of killing was premeditated and deliberate. *People v Ortiz*, 249 Mich App 297, 301; 642 NW2d 417 (2001), citing *People v*

*Kelly*, 231 Mich App 627, 642; 588 NW2d 480 (1998). "The elements of premeditation and deliberation may be inferred from circumstances surrounding the killing." *Id.* Premeditation and deliberation require sufficient time to allow the defendant to take a second look. *People v Gonzalez*, 468 Mich 636, 641; 664 NW2d 159 (2003). Courts may consider the following factors in determining whether premeditation and deliberation were established: (1) the defendant's relationship with the victim, (2) the defendant's actions before the killing, (3) the circumstances surrounding the killing, and (4) the defendant's conduct after the killing. *People v Unger*, 278 Mich App 210, 229; 749 NW2d 272 (2008). Minimal circumstantial evidence is sufficient to prove a defendant's state of mind. *People v Kanaan*, 278 Mich App 594, 622; 751 NW 2d 57 (2008), citing *People v Fennell*, 260 Mich App 261, 270-271; 677 NW2d 66 (2004).

Self-defense may be raised as a defense to a charge of first-degree murder. "[A] person is *never* required to retreat from a sudden, fierce, and violent attack; nor is he required to retreat from an attacker who he reasonably believes is about to use a deadly weapon." *People v Riddle*, 467 Mich 116, 119; 649 NW2d 30 (2002) (emphasis in original). Moreover, a person may exercise deadly force in self-defense against an attack if he honestly and reasonably believes that he is in imminent danger of death or great bodily harm. *Id*. at 119. "Once a defendant raises the issue of self-defense and satisfies the initial burden of producing some evidence from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist, the prosecution must exclude the possibility of self-defense beyond a reasonable doubt." *People v Stevens*, 306 Mich App 620, 630; 858 NW2d 98 (2014) (citations and quotation marks omitted).

Defendant stated that he swung a knife and stabbed Bailey because he was "terrified" and "concerned for his life." Thus, defendant committed a willful, deliberate, and intentional act. Defendant contends, however, that insufficient evidence was presented to support the elements of premeditation and deliberation. The jury could have inferred from evidence presented at trial and defendant's testimony that defendant had time to take a second look and deliberate as to whether he was going to stab the victim or take another course of action.

Miles, who had been friends with defendant for about five years and lived with him, testified that defendant and Bailey bickered a lot, though he could not specifically recall if they were arguing on August 14, 2015. He testified that in the evening on that date, he and his girlfriend went into his bedroom in the apartment and defendant and Bailey remained in the living room. His girlfriend left after a while and he remained in the bedroom. While he was in the bedroom prior to the stabbing, and Bailey and defendant were still in the living room, he heard no fighting, yelling, or scuffling. Miles described the apartment as "tiny" and testified that normally you could hear what was going on anywhere in the apartment. He testified that he did not see how it would possible for an argument or fight to have gone on in the apartment that he did not hear. There had been many arguments and fights in the house before and he had heard them from his bedroom. It was only approximately five minutes after his girlfriend left that he heard Bailey yelling for help and he ran into the living room to see defendant standing over Bailey as he lay on the floor bleeding. Miles described defendant's look as emotionless as he looked down at Bailey and "almost satanic." Miles testified that defendant was known to use knives and had tried to stab him once. Despite all of the fighting and arguing among the guys in his group, they remained friends and continued to spend time together.

Andrea Costigan, Miles's girlfriend who also resided off and on at defendant's apartment, testified she was at the apartment throughout the day on August 14, 2015, and that defendant and Bailey had been bickering throughout the day. According to Costigan, they argued all of the time and it was always over little things. Despite the bickering, everyone remained friends and continued to hang out together. Costigan testified that defendant would pick up weapons, "anything that was in his sight," but would never hit anyone with them. She testified that one time, however, they had to take a knife out of defendant's hand.

Defendant states that he and Bailey had been arguing. A forensic pathologist, however, testified that he found no defensive wounds on Bailey's body. And, no defensive wounds were found on defendant. The evidence shows, then, that defendant and Bailey had a history of bickering, but that defendant was the one who had a history of grabbing knives and, in fact, trying to use them, when arguing. While defendant contended that he used the knife in self-defense, the jury was free to believe the testimony of Miles who was present in the home and heard no struggle or fight prior to Bailey screaming for help. Moreover, the jury could have found that defendant had other means to defend himself. For example, it could have concluded that defendant had ample time to remove himself from the situation.

In addition, the defendant's conduct after the killing may be considered when determining whether premeditation and deliberation were established. *Unger*, 278 Mich App at 229. Defendant claimed that he left the house to find help for Bailey. Castanon's testimony, however, that he found defendant outside of the house walking slowly down the street after the stabbing contradicts defendant's statement. Defendant did not remain at the scene of the stabbing to assist police or medical professionals, or call 911, and no witnesses confirmed that he attempted to find someone or administer aid that could have helped a severely bleeding Bailey. Moreover, defendant avoided contact with police. He did not meet with police until after he was apprehended in the early morning hours after the murder. There was an indication that the police believed defendant was hiding in a friend's home before being apprehended. Defendant also did not mention his claim of self-defense to anyone he interacted with immediately after stabbing Bailey, and did not attempt to defend his actions or deny that he killed Bailey. He first mentioned his claim of self-defense after he was arrested and interviewed by police. Furthermore, the jury could have weighed evidence presented at trial that a popcorn bag was found around the handle of the knife that killed Bailey, suggesting that defendant utilized the popcorn bag in an attempt to potentially circumvent any fingerprint identification.

Finally, the jury reasonably rejected defendant's claim of self-defense. A person may use deadly force in self-defense if he honestly and reasonably believes that it is necessary. *Riddle*, 467 Mich at 119. The jury could have inferred that defendant had sufficient time to take a "second look" before stabbing Bailey, and that he did not have an honest and reasonable fear of death from Bailey "playing with him" by punching him. Defendant testified that Bailey "got in his face," was "playing with him," and was screaming at him. From this evidence, the jury could have reasonably concluded that defendant's self-defense argument was unbelievable. In rejecting his defense, the jury presumably found that it was unreasonable to escalate the situation, and that defendant was not honestly in fear of death from Bailey's actions. A reasonable person could believe that, in the context of a relationship that frequently involved bickering, jostling, and "playing around," it was not reasonable to stab Bailey, despite his alleged

punches. The jury's findings were reasonable and the jury's verdict was supported by evidence presented.

In a Standard 4 brief[1], defendant next argues that he received ineffective assistance of counsel at trial. "Both the Michigan and the United States Constitutions require that a criminal defendant enjoy the assistance of counsel for his or her defense." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012), citing Const 1963, art 1, § 20; US Const, Am VI. This means a defendant is entitled to effective assistance of counsel. *People v Stratton*, 148 Mich App 70, 78; 384 NW2d 83 (1985). Effective assistance of counsel is presumed and the defendant bears a heavy burden of proving otherwise. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). To establish ineffective assistance of counsel, a defendant must show: (1) that counsel's performance was below an objective standard of reasonableness under prevailing professional norms; and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different, *Trakhtenberg*, 493 Mich at 51.

Defendant first contends that counsel was ineffective because counsel "intentionally withheld all evidence the state had against [defendant]." Defendant's brief appears to attempt to take the form of an affidavit by defendant and supports his claim. Review, however, is limited to the record and the record has not been expanded to include this purported affidavit. Thus, defendant has failed to establish the factual predicate for his claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). In addition, defendant has *not* claimed that the prosecutor withheld evidence from defendant or defense counsel, but that defense counsel withheld evidence from defendant. As noted by the prosecution, defendant was present at his preliminary hearing and pretrial conferences where the prosecution presented its evidence to the court *and* defendant. As further noted by the prosecution, throughout the course of proceedings defendant did not once express that defense counsel was withholding evidence from him. Finally, defendant has not identified the evidence allegedly withheld, or explained how it would have affected the outcome of his trial. Thus, this claim of ineffective assistance fails.

Defendant next states that counsel was ineffective because counsel allegedly conducted no interviews of witnesses in the case. For his claim to survive, defendant must show that his counsel's failure to prepare for trial resulted in counsel's ignorance of, and hence failure to present, valuable evidence that would have substantially benefited his case. *People v Bass (On Rehearing)*, 223 Mich App 241, 253; 581 NW2d 1 (1997). Counsel's duty to investigate, however, also carries with it the discretion to determine when a particular investigation is no longer fruitful, or a particular defense will not be beneficial. *Strickland v Washington*, 466 US 668, 690-91; 104 S Ct 2052; 80 LEd2d 674 (1984). Defendant has provided no information regarding anyone who could and would rebut the testimony of prosecution witnesses. Defendant testified and had the opportunity to present his version of what occurred and to rebut Miles's testimony. The jury did not believe his testimony. Because defendant fails to identify anyone who should have been called as a witness, and fails to explain how the exclusion of their testimony affected the outcome of his trial, his second claim of ineffective assistance fails.

---

[1] Admin. Order No. 2004-6.

Finally, defendant alleges that he was provided ineffective assistance because counsel was allegedly dishonest about the circumstances surrounding his temporary suspension from practicing law. Even if this claim is true, defendant has not established ineffective assistance because he has not shown that counsel's performance fell below objective norms. Defendant does not indicate that his attorney's suspension affected his representation. Moreover, beyond making a conclusory allegation that his case was disadvantaged by counsel's suspension, he has not pointed to defenses counsel could have raised or developed, motions counsel could have brought, or how counsel could have provided more effective assistance. It is not this Court's function to ferret through the record and find support for unsubstantiated allegations. *Great Lakes Div of Nat'l Steel Corp v Ecorse*, 227 Mich App 379, 425; 576 NW2d 667 (1998). Defendant has also not established that the outcome of his trial would have been different but for counsel's alleged unspecified errors that branched from counsel's disciplinary suspension. His claim thus fails.

Affirmed.

/s/ David H. Sawyer
/s/ Stephen L. Borrello
/s/ Deborah A. Servitto

-6-